```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CECIL B. BLOWE,

                    Plaintiff,
                                              MEMORANDUM & ORDER
          -against-                           19-CV-2658 (JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:     John W. DeHaan, Esq.
                   The DeHaan Law Firm P.C.
                   300 Rabro Drive East, Suite 101
                   Hauppauge, New York 11788

For Defendant:     Dara A. Olds, Esq.
                   United States Attorney's Office
                   Eastern District Of New York
                   271 Cadman Plaza East
                   Brooklyn, New York 11201
```

SEYBERT, District Judge:

Plaintiff Cecil B. Blowe ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of his application for Social Security Disability Insurance Benefits. (Compl., D.E. 1.) Currently pending before the Court are the parties' cross-motions for judgment on the pleadings. (Pl. Mot., D.E. 12; Pl. Br., D.E. 12-1; Comm'r Mot., D.E. 16; Comm'r Br., D.E. 16-1; Pl. Reply, D.E. 17.) The only dispute is whether the case should be remanded for further administrative proceedings or for the calculation of

benefits. For the following reasons, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and this matter is REMANDED for further proceedings.

BACKGROUND[1]

I. Procedural History

On February 15, 2011, Plaintiff, a former police officer, filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning June 24, 2010. (R. 94.) That claim was denied. (R. 91-100.) On October 1, 2013, Plaintiff submitted another application alleging disability beginning March 1, 2012, and was approved for a closed period through April 9, 2015. (R. 115-37.)

As for the current appeal, on November 25, 2015, Plaintiff completed an application for disability insurance benefits alleging disability since June 6, 2015.[2] (R. 294-95.) Plaintiff's claim was denied (R. 188-99) and he requested a hearing before an Administrative Law Judge ("ALJ") (R. 200-01). On April 2, 2018, Plaintiff, accompanied by counsel, and a vocational expert, appeared at a hearing before the ALJ. (R. 60-90.)

---

[1] The background is derived from the administrative record. ("R.", D.E. 8.) For purposes of this Memorandum and Order, familiarity with the administrative record is presumed. The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

[2] In a January 14, 2016 application, Plaintiff alleged disability as of July 1, 2015. (R. 296-97.)

In a decision dated April 17, 2018, the ALJ found that Plaintiff was not disabled. (R. 10-18.) On March 18, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (R. 1-6.) This action followed. (See Compl.)

II. The Medical and Opinion Evidence

Plaintiff alleges to suffer from injuries to his left knee status post surgeries, left shoulder status post-surgery, left hand status post surgeries, and cervical spine status post discectomy and fusion at C4-C5, C5-C6, and C6-C7. (Compl. ¶ 4.) Plaintiff submitted treatment records containing raw medical data and/or bare medical findings such as medication notes, diagnosis, examination findings, electronic imaging, operation reports, Plaintiff's reports of pain, and documents submitted in connection with a workers' compensation claim from: (1) Dr. Phillippe Vaillancourt, a neurology and pain management physician (R. 405-411); (2) Dr. Paul M. Brisson, an orthopedic surgeon, who performed Plaintiff's March 11, 2016 spinal surgery (anterior cervical discectomy and fusion, C4-C5, C5-C6 and C6-C7 with SSEP[3])

---

[3] "SSEP" stands for "Somatosensory Evoked Potential," which is a test showing the electrical signals of sensation going from the body to the brain and spinal cord. See https://www.spine.org/KnowYourBack/Treatments/Assessment-Tools/Specialized-Nerve-Tests (last visited May 20, 2020).

3

(R. 42-59, 413-419, 486-88, 604-05, 608-12, 646-62); (3) Dr. Morgan Chen, an orthopedic surgeon (R. 666-69; 991-92); (4) Dr. M. Ather Mirza, an orthopedic hand surgeon, who performed carpal tunnel surgery on Plaintiff's left thumb and finger on September 20, 2011, and exploratory surgery of the left little finger, released the transverse lamina, and realigned the extensor tendon to prevent subflex of the left little finger on March 19, 2015 (R. 596-602, 614-41, 842-45, 993-94); and (5) Dr. Gus Katsigiorgis,[4] an orthopedic surgeon, who performed a left knee arthroscopic surgery, a partial medial meniscectomy, synovectomy suprapatellar space, and excision of medial suprapatellar plica on September 17, 2010 and another knee surgery on September 12, 2014 (R. 423-57, 489-91, 542-44, 549-93, 673-841, 846-959).

Dr. Katsigiorgis is the only treating-physician who submitted a "Medical Source Statement of [Plaintiff]'s Ability to Do Work-Related Activities (Physical)."[5] (R. 995-1001.) He indicated that Plaintiff began treatment on January 21, 2010 and

---

[4] Dr. Katsigiorgis's records include numerous progress notes and records from physical therapists and a board-certified physiatrist (Brett Silverman, D.O.) associated with his practice.

[5] Although he did not submit a formal Medical Source Statement, Dr. Brisson wrote in a November 30, 2016 medical note that Plaintiff "is totally disabled from his previous occupation and he won't be returning to work." (R. 662.)

4

that Plaintiff's limitations began at the earliest on June 5, 2015. (R. 1000.) He opined that Plaintiff could occasionally lift up to twenty pounds and occasionally carry five to ten pounds. (R. 995.) He further opined that Plaintiff can sit for one-hour and stand/walk for less than one hour without interruption and in an eight-hour workday. (R. 996.) Dr. Katsigiorgis opined that Plaintiff can occasionally climb stairs, ramps, and balance but can never climb ladders or scaffolds, stoop, kneel crouch, or crawl. (R. 997.) He also stated that Plaintiff would be absent for five or more days in a month due to his symptoms and that in an eight-hour workday, Plaintiff would require unscheduled breaks every hour for 15 minutes. (R. 1000.) Dr. Katsigioris's submitted a narrative report to accompany his Medical Source Statement wherein he stated that Plaintiff takes over-the-counter medication and oxycodone if needed, that he "expect[s] [Plaintiff's] disability to persist," and noted restricted range of motion with respect to Plaintiff's left knee, left shoulder, cervical spine, and left wrist/hand. (R. 1002-04.)

Plaintiff also submitted records created in connection with a workers' compensation claim from: (1) Dr. James Morrissey, an orthopedic surgeon, who evaluated Plaintiff on "multiple occasions" and submitted two Independent Medical Examination ("IME") records dated March 6, 2014 and December 11, 2014 (R. 458-

5

60, 539-41); (2) Dr. Ish Kumar, a neurosurgeon, who performed four IMEs on September 15, 2015, July 12, 2016, April 4, 2017, and December 12, 2017 (R. 461-73, 961-74, 976-81, 982-87); and (3) Dr. Raymond A. Shebairo, an orthopedic surgeon, who performed an IME on December 4, 2015 (R. 494-502).

As relevant here, Dr. Morrissey opined that Plaintiff "could do light activities such as desk work or reception type of work." (R. 460.) On April 4, 2017, Dr. Kumar noted that Plaintiff takes "heavy doses of narcotic pain medicine" and that "[d]egree of disability is total in view of the fact that he has multiple area pain that are persistent despite his undergoing extensive period of physical therapy and surgeries." (R. 979-80.) In another IME dated December 12, 2017, Dr. Kumar noted that Plaintiff's "[p]ain is severe" and that the "major problem" was that Plaintiff "has pain now for a number of years and whether he will have further surgeries done or it would improve. Several options were considered including trying a TENS unit and if it fails and surgery again is not indicated, then attempt at implanting of a spinal cord stimulator if it works on trial basis, then a permanent one can be implanted." (R. 986.)

III. The ALJ's Decision

The ALJ found that Plaintiff last met the insured-status requirements on March 31, 2018. (R. 12.) Next, the ALJ applied the familiar five-step disability analysis and concluded that

6

Plaintiff was not disabled from July 1, 2015, the alleged disability-onset date, through March 31, 2018, the date last insured. (R. 17.) At steps one through three, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date through the date of last insured, (R. 12); (2) had severe impairments consisting of "left knee impairment, status post left shoulder arthroscopies, degenerative disc disease status post cervical discectomy and fusion and left sided carpal tunnel syndrome"[6] (R. 12-13); and (3) Plaintiff's impairments did not meet or medically equal the severity of any of the impairments listed in Appendix 1 of the Social Security regulations (R. 13).

The ALJ then determined that as of the date of last insured, Plaintiff had the residual functional capacity ("RFC"):

> [T]o perform sedentary work . . . except [Plaintiff] can occasionally climb ramps or stairs but can never climb ladders, ropes or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch and crawl. He is unlimited in his ability to push and pull, but he can frequently perform fine and gross movements with the left arm. He can only occasionally reach overhead on the left side. [Plaintiff] would need a break of up to five minutes each hour to stand, stretch and change positions.

(R. 13-16.) Proceeding to steps four and five, the ALJ found that while at Step 4 Plaintiff is unable to perform his past relevant

---

[6] The ALJ determined that Plaintiff's headaches were not severe. (R. 13.)

7

work as a police officer and a sergeant (R. 16), and at Step 5 considering his RFC, age,[7] education, and work experience, Plaintiff "had acquired work skills from past relevant work that were transferrable to other occupations with job existing in significant numbers in the national economy," such as a police aide, a referral information aide, and a radio dispatcher (R. 16-17). In the alternative, the ALJ found there would "still be work in significant numbers in the national economy," such as a referral information aide and radio dispatcher, when considering that Plaintiff "cannot use the non-dominant left hand for fingering and handling, cannot reach overhead and can only occasionally reach in all directions." (R. 17.) Thus, the ALJ determined that Plaintiff was not disabled. (R. 17-18.)

    A.    <u>The RFC Determination</u>

In determining Plaintiff's RFC, the ALJ reviewed Plaintiff's testimony and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 14.)

---

[7] Plaintiff was 54 years old as of the date of last insured, which is considered an individual closely approaching advanced age, however, during the proceedings, his age category changed to advanced age. (R. 16.)

The ALJ reviewed the medical record and concluded that the "objective medical evidence and the [Plaintiff's] course of treatment did not generally support the extent of his allegations." (R. 14.) The ALJ repeatedly cited to Plaintiff's "conservative course of treatment" before and after the alleged onset date and concluded that he is capable of a range of sedentary work. (R. 14.) The ALJ also stated that "[a]lthough the claimant did eventually require cervical discectomy and fusion, the conservative treatment before and after that surgery did not suggest greater limitations that the above range of sedentary work." (R. 14.)

The ALJ then assigned little weight to all "opinions given prior to the alleged onset date," (July 1, 2015). (R. 15.) The ALJ then assigned little weight to statements made in treatment notes by Dr. Mizra, Dr. Brisson, and Dr. Katsigiorgis. (R. 15.) In each instance, the ALJ stated that "the issue of disability is a determination reserved to the Commissioner," their "opinions do not specify vocational limitations to assess the extent of [Plaintiff's] limitations," and "the course of treatment was not consistent with" statements of disability. (R. 15.) The ALJ next assigned little weight to the Medical Source Statement submitted by Dr. Katsigiorgis because his statements "were not consistent with the record as a whole." (R. 15.)

9

The ALJ also summarized Plaintiff's medical history and stated that "after his surgeries, [Plaintiff] had conservative management with physical therapy that ended in 2017 . . . [and] he was only taking pain medication as needed, and at the hearing, he said he takes this pain medication once per week along with over the counter medication as needed. This conservative management does not suggest greater limitations are warranted." (R. 15-16.)

DISCUSSION

I.  Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether Plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

II. Analysis

The parties agree that remand is warranted. Plaintiff argues that remand is necessary for the calculation of benefits because the ALJ improperly dismissed his treating physicians' opinions and instead relied upon her own interpretation of the

medical record.[8]  (Pl. Br. at 20-31.)  The Commissioner concedes that the ALJ "arbitrarily substitute[d] [her] own judgment for competent medical opinion" and did not adequately explain the basis for the RFC.  (Comm'r Br. at 14-15.)  The Commissioner argues, however, that remand is warranted for further administrative proceedings for a new decision "that permits meaningful judicial review in relation to the evidence in the record" and because "the record contains evidence that the Commissioner must consider, but does not compel a conclusion that Plaintiff was disabled."  (Comm'r Br. at 14-16.)

     "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "'there are gaps in the administrative record or the ALJ has applied an improper legal standard'" and where "further findings or explanation will clarify the rationale for the ALJ's decision."  <u>Coleson v. Comm'r of Soc. Sec.</u>, No. 18-CV-02862, 2020 WL 1989280, at *3 (E.D.N.Y. Apr. 26, 2020) (quoting <u>Rosa v. Callahan</u>, 168 F.3d 72, 82-83 (2d Cir. 1999)).  Where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no

---

[8] In the alternative, Plaintiff requests a new hearing before a different ALJ.

11

purpose, the court may reverse and remand solely for the calculation and payment of benefits." Id. (internal quotation marks and citations omitted).

The Court finds that the appropriate remedy is to remand for further proceedings because "the ALJ created a gap in the record that [s]he was obligated to develop when [s]he rejected the only medical opinion as to Plaintiff's physical functional capacity." Jefferson v. Saul, No. 18-CV-1254, 2020 WL 2183095, at *3 (W.D.N.Y. May 5, 2020). The ALJ assigned little weight to the only treating physician, Dr. Katsigiorgis, who provided a Medical Source Statement of Plaintiff's "Ability to Do Work-Related Activities." (R. 15.) Moreover, the ALJ did not address or even reference the IME records.[9] Thus, the ALJ's rejection of the only medical opinion regarding "Plaintiff's physical functional capabilities left a significant gap in the record." Judd v. Berryhill, No. 17-CV-1188, 2018 WL 6321391, at *7 (W.D.N.Y. Dec. 4, 2018) (collecting cases). As such, the "ALJ should have obtained a medical opinion from a qualified source, as her RFC could not

---

[9] While some of the opinions and conclusions in the IME opinions referenced standards relevant to workers' compensation claims and are "not binding on the ALJ's determination, the opinions still require analysis and weighing in accordance with SSA regulations." Chiesa v. Comm'r of Soc. Sec., No. 13-CV-1102, 2016 WL 1048996, at *9 (N.D.N.Y. Mar. 11, 2016) (citing Vincent v. Shalala, 830 F. Supp. 126, 131 (N.D.N.Y. 1993) (stating that "it was perfectly appropriate for the ALJ to weigh the reports as he saw fit" where doctor's opinions were made in context of workers' compensation)).

12

stand if unsupported by at least one medical opinion." Arias v. Saul, No. 18-CV-1296, 2020 WL 1989277, at *7 (E.D.N.Y. Apr. 25, 2020)

Further, the ALJ assigned little weight to a selection of statements made in treatment notes from Plaintiff's treating-physicians. Under the relevant regulations, the Commissioner must "make every reasonable effort" to assist the claimant in developing a "complete medical history." 20 C.F.R. § 404.1512(d). Indeed, "'it is the rule in our circuit that the ALJ, unlike a judge in a trial, must herself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding. This duty . . . exists even when, as here, the claimant is represented by counsel.'" Arias, 2020 WL 1989277, at *7 (quoting Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996)) (ellipsis in original). The ALJ recognized that Dr. Brisson's and Dr. Mizra's treatment notes did not "specify vocational limitations to assess the extent of [Plaintiff]'s limitations." (R. 15.) Instead of using "that as an opportunity to further substantiate the record, the ALJ simply discounted both opinions." Rivera-Maysonet v. Comm'r of Soc. Sec., No. 18-CV-1142, 2020 WL 813306, at *5 (W.D.N.Y. Feb. 19, 2020). Thus, if Plaintiff's medical record was inadequate, it was "the ALJ's duty to seek additional information from the [treating physician] sua sponte." Arias, 2020 WL 1989277,

13

at *7 (internal quotation marks and citations omitted; alteration in original).

Moreover, there is no doubt that Plaintiff's lengthy medical record contained evidence that he suffered from pain in his knee, back, shoulder, and hand. However, the ALJ's decision demonstrates her "reliance upon her own lay opinion to determine Plaintiff's RFC, an error requiring remand." Judd, 2018 WL 6321391, at *7 ("'[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an[ ] ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.'") (quoting Wilson v. Colvin, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)).

A "determination of Plaintiff's entitlement to benefits cannot be made without the Commissioner's resolving the existing gaps in the record" and "remand for administrative proceedings as opposed to reversal for calculation of benefits is the appropriate remedy in this case."[10] Rivera-Maysonet, 2020 WL 813306, at *6; see also James C. v. Comm'r of Soc. Sec., No. 19-CV-0038, 2020 WL 103813, at *10 (D. Vt. Jan. 9, 2020). "The Court recognizes that remanding this case for further proceedings will unfortunately

---

[10] In light of this finding, the Court need not reach the merits of Plaintiff's remaining arguments. On remand, the Commissioner can address the other claims of error not discussed herein.

14

delay the disposition of this case that has already been pending for over five years. However, 'absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits.'" Rivera-Maysonet, 2020 WL 813306, at *6 (quoting Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996)).

Finally, Plaintiff requests that the Court order the Commissioner to assign a new ALJ to hear his case on remand. (Pl. Br. at 35.) Pursuant to the Social Security Regulations, an ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. Generally, it is within the Commissioner's discretion to decide whether to assign a different ALJ on remand. Sutherland v. Barnhart, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004) (citations omitted). Courts in this circuit order the Commissioner to reassign a case to a new ALJ where the ALJ's conduct "gives rise to serious concerns about the fundamental fairness of the disability review process[.]" Id. When making this determination, courts consider factors such as: "(1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; [or] (4) a refusal

15

to weigh or consider evidence with impartiality, due to apparent hostility to any party." Id.

Here, other than requesting a new ALJ on remand, Plaintiff does not argue, nor does the Court find, that the ALJ will not comply with her obligations to impartially and completely develop the record on remand. See id. (collecting cases). As such, the Court defers to the Commissioner who "'should consider in his discretion whether the case warrants a 'fresh look' by a new ALJ.'" Paul B. v. Comm'r of Soc. Sec., No. 18-CV-0498, 2019 WL 4305410, at *7 (N.D.N.Y. Sept. 11, 2019) (quoting Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 300-01 (W.D.N.Y. 2006)).

## CONCLUSION

Accordingly, Plaintiff's motion (D.E. 12) is DENIED and the Commissioner's motion (D.E. 16) is GRANTED. This matter is REMANDED for proceedings consistent with this Memorandum and Order. The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June  12 , 2020
       Central Islip, New York